**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PHILLIP CAGLE, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. |
| | ) |
| v. | ) |
| | ) |
| CHARTER COMMUNICATIONS, INC., | ) Jury Trial Demanded |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## COMPLAINT

Phillip Cagle ("Plaintiff" or "Mr. Cagle") by and through his attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Charter Communications, Inc.** ("Charter" or "Defendant"):

### INTRODUCTION

1.      Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, *et seq.*

### JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3.      Defendant continuously and systematically transacts business in the State of Delaware.

4.      Further, Defendant maintains its corporate headquarters within the District of Delaware at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

5.      Accordingly, this Court has personal jurisdiction over Defendant in this matter.

6.      Furthermore, venue is proper under 28 U.S.C. § 1391(b)(1).

**PARTIES**

7.      Plaintiff Phillip Cagle is an adult citizen, who at all times relevant hereto resided in Fort Worth, Texas 76133.

8.      Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

9.      Defendant Charter Communications, Inc. is a Delaware corporation, which maintains its headquarters at 400 Atlantic Street, Stamford, Connecticut 06901.

10.     Defendant is a "person" as that term is defined by 47 U.S.C. §153(39)

11.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

**FACTUAL ALLEGATIONS**

12.     Plaintiff, Phillip Cagle is a is a disabled veteran and career law enforcement officer who resided at all times relevant to this lawsuit, in Fort Worth, Texas.

13.     At all times relevant hereto, Mr. Cagle owned a cell phone, the number for which was (817) XXX-8848.

14.     At all times relevant hereto, Mr. Cagle primarily used that cell phone for residential purposes.

15.     Mr. Cagle registered that cell phone number on the Do Not Call Registry on or around January 23, 2007.

16.    Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from unwanted telemarketing and solicitation calls.

17.    Beginning in or around October 2020 and continuing through the date of the filing of this Complaint, Defendant placed a shocking and exorbitant number of telemarketing robocalls to Plaintiff's cell phone, soliciting the sale of Spectrum cable, phone and/or internet plans and services.

18.    At no time prior to Charter's above-referenced conduct did Defendant secure Plaintiff's express written consent, or any consent, to place telemarketing calls, or calls that utilize a pre-recorded voice.

19.    None of the communications by Defendant were made for "emergency purposes".

20.    A substantial majority of the telemarketing calls from Charter to Mr. Cagle began with a pre-recorded message that announced Spectrum as the caller, and instructed Plaintiff to "Press '1' to speak with an agent".

21.    Being annoyed at receiving the calls and trying to both identify the caller and put a stop to the calls, periodically Plaintiff would do as instructed and press "1" to speak with an agent.  He would then ask representatives to identify the company behind the calls.  Without exception the response Plaintiff was provided by representatives was that they worked for "Spectrum" (a Charter d/b/a), to which Plaintiff would clearly an unambiguously make a request to stop calling.

22.    The telemarketing calls were highly disruptive to Mr. Cagle who has ongoing health and medical issues and therefore gets regular calls from doctors and health specialists and needs to answer his phone.

23.     Mr. Cagle also requires substantial rest because of his medical conditions.  The robocalls would often cause disruption and interfere with his efforts to obtain rest.

24.     Accordingly, the robocalls from charter were especially upsetting and disruptive to Plaintiff's daily life.

25.     When calls did not cease, Mr. Cagle, became more frustrated and tried other methods to convey his desire that the calls were unwanted, including a message through Facebook on our around January 22, 2021.  A true and correct copy of the Facebook message is attached hereto as **Exhibit "A".**

26.     A Charter's representative communicating under the identity "PhilS" replied to the Facebook message, making what appeared to be a common statement to the effect that although Charter did not have an ***opt-in*** for the calls from Mr. Cagle, he was able to ***opt-out*** by accessing a provided hyperlink. *See* **Exhibit "A".**

27.     Incredibly, the Charter representative conceded placing telemarketing calls to Plaintiff without the requisite legally mandated consent by responding: "We advertise and solicit like any other company.  However, you can opt out of these voluntarily." *See* **Exhibit "A".**

28.     Angered that Charter's business model included random marketing calls of this type but nonetheless wishing to stop the calls, Mr. Cagle did as suggested, followed the link provided by Charter's agent and "opted out" in the manner indicated.

29.     Notwithstanding the above instructions and "opt-out" selection, the calls did not stop and the unwanted telemarketing campaign against Mr. Cagle by Charter, continued.

30.     Incredibly, while continuing to harass Mr. Cagle, Charter sent him by U.S. Postal service what can only be described as a cryptic and nearly incomprehensible letter, dated March 4, 2021.  A true and correct copy of that correspondence is attached as Exhibit "B."

31.    That letter read as follows:

In regards to Acct # Account number-Non customer

Dear Mr. Caple (sic):

We have received your recent feedback, however Charter's attempts to reach you have been unsuccessful.  As you are a valued Charter customer, we would like the opportunity to address your concern(s).  It is difficult to provide assistance without speaking with you directly.  Please contact my/our office directly at the phone number listed below at your earliest convenience.  In the event I am temporarily unavailable, please provide a number where you can be reached and the best time/day to return your call.

We look forward to working with you to resolve your concerns as quickly as possible.

Sincerely,

Julie Wheeler Internet/Phone Repair Manager
10300 Ormsby Park Place
Louisville, KY 40223
502-420-7226

32.    Plaintiff did not know Julie Wheeler, the stated author of the letter and rather than asking to speak with anyone at Charter, Plaintiff was in fact doing **everything he could think of to STOP** calls from Defendant.

33.    The letter refers to Plaintiff as a "valued Charter customer" when he was not a customer of Charter.

34.    Plaintiff believes it more than ironic that Charter chose to write Mr. Cagle being unable to reach him by telephone, when those very calls were the reason Plaintiff had complained; unwanted and unconsented phone calls.

35.    In response to reading Exhibit B, Plaintiff tried yet another approach; sending a certified letter to Charter's legal department on March 30, 2021 advising the calls were in violation of the Telephone Consumer Protection Act.

36.     Incredibly, after receipt of the certified letter, Charter calls continued.

37.     To this point, Mr. Cagle's verbal and written instructions to stop the calls on multiple occasions, having been conveyed in multiple ways, received and even acknowledged by Defendant's own people and technologies (the hyperlink), failed to stop the placing of unlawful calls to him.

38.     Being persistent and determined, Plaintiff thought of a new way to reach someone at Charter to stop the calls; this time by filing a complaint with the Better Business Bureau on April 20, 2021. Acknowledging receipt of that complaint, a Charter representative contacted Mr. Cagle on April 23, 2021 and claimed that he had personally "opted Mr. Cagle out", promising a cessation of further calls.

39.     Given the above having all failed, and being without any other ideas to stop the calls, Plaintiff felt he had no choice but to apply his experience from being in law enforcement to go "undercover" and act as the type of "private attorney general" Congress prescribed private citizens to be when dealing with unlawful behavior of the type in which Charter engaged.

40.     Purely for investigative, identity confirming and evidentiary purposes, after receiving another unlawful telemarketing call from Charter, Plaintiff feigned interest in what the sales representative was selling and nominally agreed to purchase a Spectrum telecommunications service package on May 25, 2021. Doing so established for certain that Defendant was the party placing the unwanted telemarketing calls as he received Spectrum equipment from Defendant shortly thereafter.

41.     By sending the service package to Plaintiff after the above-referenced unlawful telemarketing call, Charter ratified the unlawful communications and derived sales revenue.

42.     The items Plaintiff received from Charter contained Spectrum cable equipment and included a return address of: "Spectrum Home Shipment, CTDI – Charter Communications, 701 Lakeside Parkway, Flower Mound, TX 75028."  A true and correct picture of the shipping label on the package containing Spectrum equipment is attached hereto as **Exhibit "C"**.

43.     On or around May 27, 2021, within two days of receipt of Spectrum equipment, Plaintiff promptly returned the package to Charter, unopened, and called Charter to cancel his services.  Cagle clearly and unequivocally explained what occurred to Charter that he did not want to be contacted.

44.     Based upon all of the above, Plaintiff avers that any claimed business relationship occurred solely ***and briefly***, from the investigative process as no services were ever used and no equipment opened before services were cancelled and the cease and desist again conveyed to Charter.

45.     Likewise, if any "consent" to place telemarketing calls was provided through the investigative purchase, that consent was revoked in the May 27, 2021 call.

46.     On May 31, 2021, Charter Marketing Director "Todd Criswell" called Plaintiff to advise he had investigated Plaintiff's complaint about the unlawful robocalls and erroneously concluded the calls were "spoofed" by persons impersonating Charter to obtain banking or financial information from US consumers.

47.     Upon information and belief, even the polite and earnest-sounding "Todd Criswell" knew or had reason to know what he was telling Plaintiff was false; the equipment delivered to Plaintiff by Spectrum could only have happened as the direct result of a sales from an unlawful solicitation call placed by those very same alleged "spoof callers".

48.     Plaintiff avers that if those callers had not been associated with Charter, then Defendant would never had created an account in Plaintiff's name, would never have sent Plaintiff the equipment and would never had set up his services.

49.     Plaintiff avers that as with everything Charter has done involving Mr. Cagle, the logic behind Mr. Criswell's conclusions fail to hold water in that nothing could have resulted within Charter if an unrelated "spoofed" caller were only seeking Plaintiff's banking or financial information and/or was not associated with Charter.

50.     Based upon information and prior investigation of Defendant, Charter does hire overseas vendors it designates "resellers" and ostensibly instructs them not to unlawfully telemarket to consumers while at the very same time providing generous financial incentives for those same resellers to do exactly that, and when successful selling Charter services, substantially profits from those allegedly "prohibited" calls.

51.     Defendant tacitly and/or directly encourages unlawful robocalls by its resellers by incentivizing them to behave in the manner reflected above, while at the same time professing intolerance of such practices to the general public.

52.     In another example of misrepresentation, if not gaslighting, Mr. Criswell called Plaintiff again on June 3, 2021, this time reporting that the third-party reseller maintained that it was *Mr. Cagle who called Charter.*

53.     Upon information and belief, Charter conveyed this claim to Plaintiff knowing that (1) it was false and; (2) that Charter resellers routinely give that response to maintain the ongoing "wink-wink" relationship with Defendant.

54.     After those interactions between Mr. Cagle and Mr. Criswell, Charter continued its campaign of unlawful telemarketing to Mr. Cagle.

55.     Continuing to receive irritating and invasive robocalls, in order to prove it was actually Charter making the calls, Plaintiff ordered additional Spectrum packages that were delivered to his home on or around September 14, 2021 and April 14, 2022.  *See* Ex. D, order/delivery confirmations from Sept. 14, 2021 and April 14, 2022.  After those orders were placed, Cagle immediately cancelled his Spectrum plan upon confirmation that it was Charter making the calls and not random third-parties "spoofing" calls as Charter so often claims.

56.     As of the date of the filing of this Complaint in June 2022, Plaintiff continues to receive numerous telemarketing calls from Defendant.

57.     From October 2020 through June 9, 2021, Charter placed at least **351 calls** to Mr. Cagle.

58.     A non-exhaustive list of those calls to Mr. Cagle's cell phone is below:

| Date: | Caller ID: |
| --- | --- |
| October 20, 2020 | 817-279-0265 |
| October 21, 2020 | 817-278-1073 |
| January 22, 2021 | 817-413-7237 |
| February 17, 2021 | 817-589-7656 |
| March 4, 2021 | 817-295-3334 |
| March 9, 2021 | 817-468-4973 |
| March 10, 2021 | 817-412-5595 |
| March 26, 2021 | 817-411-6765 |
| March 30, 2021 | 817-818-3443 |
| April 22, 2021 | 720-739-9828 |
| April 26, 2021 | 817-563-4428 |
| April 27, 2021 | 817-271-9788 |
| April 28, 2021 | 817-407-5522 |
| May 22, 2021 | 817-466-8179 |
| May 24, 2021 | 817-298-1285 |
| May 25, 2021 | 817-784-5618 |
| May 25, 2021 | 414-807-6664 |
| May 27, 2021 | 877-288-2020 |
| May 28, 2021 | 817-665-1516 |
| May 29, 2021 | 817-424-9353 |
| June 12, 2021 | 817-379-8027 |

| | |
|---|---|
| June 13, 2021 | 859-429-9209 |
| June 14, 2021 | 817-491-3581 |
| June 17, 2021 | 203-705-5643 |
| June 17, 2021 | 817-472-0756 |
| June 17, 2021 | 817-436-9151 |
| June 25, 2021 | 817-358-0327 |
| June 28, 2021 | 917-879-0538 |
| June 30, 2021 | 917-313-0416 |
| July 5, 2021 | 817-456-7395 |
| July 16, 2021 | 817-473-0067 |
| July 16, 2021 | 817-361-1581 |
| July 16, 2021 | 817-348-7778 |
| July 17, 2021 | 817-832-3995 |
| July 19, 2021 | 817-421-7009 |
| July 19, 2021 | 817-440-5015 |
| July 19, 2021 | 817-433-1531 |
| July 22, 2021 | 817-385-6979 |
| July 26, 2021 | 817-462-8880 |
| July 27, 2021 | 817-366-6298 |
| July 29, 2021 | 817-709-4109 |
| July 30, 2021 | 817-349-5307 |
| July 30, 2021 | 817-379-2360 |
| July 31, 2021 | 817-351-8309 |
| July 31, 2021 | 817-453-4758 |
| July 31, 2021 | 817-441-2119 |
| July 31, 2021 | 817-472-4217 |
| July 31, 2021 | 817-393-3656 |
| July 31, 2021 | 817-767-6357 |
| August 3, 2021 | 817-405-2585 |
| August 3, 2021 | 866-396-0418 |
| August 3, 2021 | 866-396-0418 |
| August 5, 2021 | 817-353-8725 |
| August 6, 2021 | 817-388-2688 |
| August 7, 2021 | 817-387-4720 |
| August 9, 2021 | 817-469-8933 |
| August 9, 2021 | 817-429-6113 |
| August 12, 2021 | 817-699-5181 |
| August 13, 2021 | 817-724-5505 |
| August 13, 2021 | 817-362-0040 |
| August 14, 2021 | 817-453-1930 |
| August 14, 2021 | 817-472-7308 |
| August 16, 2021 | 817-702-3553 |
| August 16, 2021 | 817-750-4007 |
| August 25, 2021 | 817-391-1779 |
| August 25, 2021 | 845-793-8109 |

| | |
|---|---|
| August 27, 2021 | 817-270-0886 |
| August 27, 2021 | 817-367-7181 |
| August 27, 2021 | 817-445-7531 |
| August 28, 2021 | 817-270-0426 |
| August 30, 2021 | 817-692-7648 |
| September 2, 2021 | 817-758-8458 |
| September 6, 2021 | 817-665-5965 |
| September 7, 2021 | 817-765-3993 |
| September 7, 2021 | 817-722-3379 |
| September 7, 2021 | 817-385-6716 |
| September 9, 2021 | 817-246-6628 |
| September 9, 2021 | 817-465-0527 |
| September 10, 2021 | 817-464-4620 |
| September 10, 2021 | 817-246-5667 |
| September 13, 2021 | 817-347-9647 |
| September 13, 2021 | 817-779-6140 |
| September 14, 2021 | 817-270-0843 |
| September 14, 2021 | 817-368-1528 |
| September 14, 2021 | 817-752-4938 |
| September 14, 2021 | 817-374-8239 |
| September 15, 2021 | 817-246-0661 |
| September 16, 2021 | 817-710-8196 |
| September 16, 2021 | 817-461-1224 |
| September 21, 2021 | 817-688-1098 |
| September 23, 2021 | 906-259-9545 |
| September 24, 2021 | 817-456-6364 |
| September 25, 2021 | 817-378-2230 |
| September 28, 2021 | 817-700-7988 |
| September 29, 2021 | 817-473-0906 |
| October 1, 2021 | 817-270-0815 |
| October 4, 2021 | 817-270-0890 |
| October 7, 2021 | 817-762-0427 |
| October 8, 2021 | 817-270-0743 |
| October 8, 2021 | 817-608-2367 |
| October 9, 2021 | 817-430-0617 |
| October 11, 2021 | 817-453-4340 |
| October 11, 2021 | 817-275-0696 |
| October 11, 2021 | 817-460-3732 |
| October 14, 2021 | 817-384-0538 |
| October 20, 2021 | 817-365-3930 |
| October 22, 2021 | 817-308-9543 |
| October 27, 2021 | 817-687-3285 |
| October 28, 2021 | 817-690-6491 |
| October 29, 2021 | 817-455-4601 |
| October 29, 2021 | 817-401-3171 |

| | |
|---|---|
| November 4, 2021 | 817-715-1121 |
| November 6, 2021 | 817-395-5776 |
| November 6, 2021 | 817-393-8717 |
| November 11, 2021 | 817-270-0932 |
| November 15, 2021 | 817-759-7968 |
| November 16, 2021 | 817-727-5050 |
| November 19, 2021 | 817-464-0463 |
| November 24, 2021 | 817-351-4597 |
| November 24, 2021 | 817-646-4351 |
| November 24, 2021 | 817-718-5012 |
| November 27, 2021 | 817-403-2184 |
| December 1, 2021 | 817-735-9671 |
| December 3, 2021 | 817-686-8941 |
| December 3, 2021 | 817-712-7155 |
| December 3, 2021 | 817-417-8677 |
| December 7, 2021 | 817-343-6874 |
| December 8, 2021 | 817-764-3269 |
| December 9, 2021 | 817-362-7498 |
| December 10, 2021 | 817-362-7498 |
| December 10, 2021 | 817-229-5292 |
| December 10, 2021 | 817-357-2099 |
| December 11, 2021 | 817-371-3033 |
| December 16, 2021 | 817-315-9528 |
| December 16, 2021 | 817-202-3132 |
| December 17, 2021 | 817-270-0391 |
| December 18, 2021 | 817-218-0543 |
| December 18, 2021 | 817-461-7202 |
| December 21, 2021 | 817-270-0857 |
| December 22, 2021 | 817-409-2642 |
| December 23, 2021 | 817-270-0720 |
| January 5, 2022 | 817-752-3361 |
| January 7, 2022 | 817-324-4836 |
| January 7, 2022 | 817-291-5526 |
| January 11, 2022 | 817-270-0117 |
| January 11, 2022 | 817-205-3076 |
| January 11, 2022 | 817-396-1089 |
| January 11, 2022 | 817-270-0177 |
| January 17, 2022 | 817-288-8516 |
| January 17, 2022 | 817-377-9375 |
| January 17, 2022 | 817-455-4499 |
| January 17, 2022 | 817-270-0411 |
| January 17, 2022 | 817-473-7417 |
| January 18, 2022 | 817-770-1310 |
| January 18, 2022 | 817-774-6661 |
| January 19, 2022 | 817-432-7261 |

| | |
|---|---|
| January 19, 2022 | 817-301-4093 |
| January 20, 2022 | 817-225-8884 |
| January 20, 2022 | 817-754-3928 |
| January 20, 2022 | 817-715-3720 |
| January 20, 2022 | 817-306-8133 |
| January 21, 2022 | 817-443-0348 |
| January 21, 2022 | 817-439-7336 |
| January 21, 2022 | 817-473-4099 |
| January 22, 2022 | 901-460-2091 |
| January 22, 2022 | 901-460-2091 |
| January 24, 2022 | 901-460-2091 |
| January 24, 2022 | 817-526-0618 |
| January 24, 2022 | 817-422-1257 |
| January 24, 2022 | 817-368-6131 |
| January 24, 2022 | 817-350-3169 |
| January 24, 2022 | 817-287-0212 |
| January 25, 2022 | 817-208-7310 |
| January 25, 2022 | 817-324-6861 |
| January 26, 2022 | 817-695-6961 |
| January 27, 2022 | 817-384-3465 |
| January 28, 2022 | 817-207-7267 |
| January 28, 2022 | 817-409-0953 |
| January 28, 2022 | 817-365-1946 |
| January 28, 2022 | 817-375-6585 |
| January 31, 2022 | 817-727-5679 |
| January 31, 2022 | 817-272-2251 |
| January 31, 2022 | 817-312-7179 |
| February 1, 2022 | 817-685-9492 |
| February 7, 2022 | 817-228-7967 |
| February 8, 2022 | 817-262-3602 |
| February 9, 2022 | 817-403-2013 |
| February 10, 2022 | 817-307-5820 |
| February 10, 2022 | 817-258-0329 |
| February 11, 2022 | 817-748-1911 |
| February 11, 2022 | 817-332-7946 |
| February 12, 2022 | 817-401-2400 |
| February 14, 2022 | 817-345-0998 |
| February 14, 2022 | 817-403-3849 |
| February 15, 2022 | 817-330-0968 |
| February 15, 2022 | 817-406-8958 |

| February 15, 2022 | 817-687-0465 |
|---|---|
| February 15, 2022 | 817-362-6670 |
| February 16, 2022 | 817-446-1269 |
| February 18, 2022 | 817-352-1722 |
| February 19, 2022 | 817-341-8652 |
| February 19, 2022 | 817-747-7872 |
| February 23, 2022 | 817-321-8809 |
| February 23, 2022 | 817-672-3873 |
| February 24, 2022 | 817-301-4926 |
| February 24, 2022 | 817-359-6633 |
| February 25, 2022 | 817-357-2306 |
| February 26, 2022 | 817-472-8613 |
| February 26, 2022 | 817-488-8278 |
| February 28, 2022 | 817-402-3894 |
| February 28, 2022 | 817-245-1231 |
| February 28, 2022 | 817-338-2026 |
| February 28, 2022 | 817-364-4605 |
| March 1, 2022 | 817-212-6658 |
| March 1, 2022 | 817-458-2541 |
| March 1, 2022 | 817-216-0455 |
| March 2, 2022 | 817-209-5424 |
| March 3, 2022 | 817-272-7794 |
| March 4, 2022 | 817-583-6158 |
| March 4, 2022 | 817-392-7580 |
| March 5, 2022 | 817-332-5303 |
| March 5, 2022 | 817-305-0233 |
| March 5, 2022 | 817-261-4486 |
| March 5, 2022 | 817-508-7268 |
| March 7, 2022 | 817-351-6126 |
| March 7, 2022 | 817-204-0797 |
| March 7, 2022 | 817-359-8802 |
| March 7, 2022 | 817-490-1819 |
| March 8, 2022 | 817-243-6870 |
| March 8, 2022 | 817-341-2122 |
| March 9, 2022 | 817-296-2294 |
| March 9, 2022 | 817-313-7767 |
| March 9, 2022 | 817-665-0460 |
| March 10, 2022 | 817-470-4323 |
| March 10, 2022 | 817-346-2927 |
| March 10, 2022 | 817-346-0577 |
| March 11, 2022 | 817-291-6586 |
| March 11, 2022 | 817-329-2915 |
| March 11, 2022 | 817-239-9656 |
| March 11, 2022 | 817-340-0409 |
| March 12, 2022 | 817-239-0757 |

| | |
|---|---|
| March 12, 2022 | 817-445-2759 |
| March 14, 2022 | 817-588-8357 |
| March 14, 2022 | 817-393-8564 |
| March 16, 2022 | 817-459-8075 |
| March 16, 2022 | 817-377-7244 |
| March 16, 2022 | 817-376-0400 |
| March 16, 2022 | 817-213-5515 |
| March 16, 2022 | 817-417-6648 |
| March 17, 2022 | 817-299-1826 |
| March 17, 2022 | 817-294-3196 |
| March 17, 2022 | 817-365-1856 |
| March 18, 2022 | 817-419-4409 |
| March 18, 2022 | 817-396-3263 |
| March 18, 2022 | 817-356-1186 |
| March 18, 2022 | 817-282-4451 |
| March 19, 2022 | 817-347-8266 |
| March 19, 2022 | 817-410-1115 |
| March 22, 2022 | 817-383-8412 |
| March 22, 022 | 817-433-1352 |
| March 23, 2022 | 817-336-7370 |
| March 23, 2022 | 817-628-4164 |
| March 24, 2022 | 817-242-1525 |
| March 24, 2022 | 817-217-5595 |
| March 25, 2022 | 817-271-4910 |
| March 25, 2022 | 817-288-5127 |
| March 25, 2022 | 817-375-4438 |
| March 25, 2022 | 817-336-8580 |
| March 25, 2022 | 817-672-3873 |
| March 25, 2022 | 817-672-3873 |
| March 26, 2022 | 817-352-1904 |
| March 26, 2022 | 817-401-8335 |
| March 26, 2022 | 817-375-6143 |
| March 29, 2022 | 817-410-6137 |
| April 1, 2022 | 817-541-9360 |
| April 1, 2022 | 817-259-4317 |
| April 1, 2022 | 817-771-3563 |
| April 2,2022 | 817-321-3040 |
| April 2, 2022 | 817-341-5779 |
| April 9, 2022 | 817-379-1548 |
| April 12, 2022 | 817-240-3185 |
| April 12 2022 | 817-357-4036 |
| April 13, 2022 | 817-672-3873 |
| April 14, 2022 | 817-361-5702 |
| April 14, 2022 | 817-672-3873 |
| April 14, 2022 | 817-609-6384 |

| | |
|---|---|
| April 15, 2022 | 817-294-3973 |
| April 18, 2022 | 817-229-8929 |
| April 21, 2022 | 817-348-0618 |
| April 21, 2022 | 817-291-4458 |
| April 22 2022 | 817-462-4862 |
| April 23, 2022 | 817-264-5677 |
| April 23, 2022 | 817-307-9499 |
| April 26, 2022 | 817-535-0617 |
| April 26, 2022 | 817-434-7905 |
| April 26, 2022 | 817-293-6894 |
| April 28, 2022 | 817-207-2627 |
| April 29, 2022 | 817-364-4840 |
| April 29, 2022 | 817-672-3873 |
| April 30, 2022 | 817-672-3873 |
| May 3, 2022 | 817-443-9432 |
| May 6, 2022 | 817-407-6212 |
| May 7, 2022 | 817-672-3873 |
| May 9, 2022 | 817-672-3873 |
| May 9, 2022 | 817-672-3873 |
| May 9, 2022 | 817-713-8261 |
| May 10, 2022 | 817-365-8474 |
| May 10, 2022 | 817-225-7643 |
| May 10, 2022 | 817-240-4616 |
| May 10, 2022 | 817-469-8460 |
| May 10, 2022 | 817-755-9350 |
| May 12, 2022 | 817-301-3578 |
| May 19, 2022 | 817-385-9584 |
| May 20, 2022 | 817-672-3873 |
| May 21, 2022 | 817-335-9468 |
| May 23, 2022 | 817-425-6535 |
| May 24, 2022 | 817-322-3052 |
| May 24, 2022 | 817-466-3799 |
| May 24, 2022 | 817-231-5271 |
| May 25, 2022 | 817-264-8108 |
| May 26, 2022 | 817-421-5922 |
| May 27, 2022 | 817-354-4367 |
| May 27, 2022 | 817-248-1170 |
| May 27, 2022 | 817-365-1907 |
| May 27, 2022 | 817-393-3538 |
| May 28, 2022 | 817-435-5615 |
| May 28, 2022 | 817-428-5305 |
| May 30, 2022 | 817-304-3637 |
| May 30, 2022 | 817-263-2964 |
| May 30, 2022 | 817-452-1487 |
| 0June 01, 2022 | 817-309-2764 |

| June 1, 2022 | 817-374-5229 |
|---|---|
| June 3, 2022 | 817-219-9888 |
| June 3, 2022 | 817-451-2441 |
| June 3, 2022 | 817-213-2158 |
| June 3, 2022 | 817-356-5415 |
| June 3, 2022 | 817-418-7681 |
| June 4, 2022 | 817-354-8547 |
| June 4, 2022 | 817-443-5291 |
| June 4, 2022 | 817-353-5291 |
| June 4, 2022 | 817-457-9836 |
| June 6, 2022 | 817-344-6190 |
| June 7, 2022 | 817-375-6898 |
| June 7, 2022 | 817-424-3042 |
| June 8, 2022 | 817-336-0909 |
| June 9, 2022 | 817-287-0845 |
| June 9, 2022 | 817-271-9579 |
| June 9, 2022 | 817-249-7359 |

59.     Upon information and belief, Plaintiff received additional calls beyond those identified in the chart above.

60.     In fact, as of the date of the filing of this Complaint, Mr. Cagle continues to receive a high volume of calls from Charter.

61.     As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation, anger and a sense that his privacy has been invaded by Defendant, among other reactions.

62.     The foregoing acts and omissions were in violation of the TCPA demonstrate negligent training, hiring and supervision and invaded upon Plaintiff's privacy.

## Direct and Vicarious Liability

63.     To the extent Charter outsources its illegal robocalling to various agents, call centers and vendors, it is still liable for calls that violate the TCPA.

64.     On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

65.     Moreover, the May 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. Id. At 6587 n. 107.

66.     The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. At 6593.

67.     Charter hired, permitted, and enjoyed the benefits of agents, call centers and vendors' mass robocalling.

68.     Charter acted as the principal, and the agents, call centers and vendors acted as its agent.

69.     Charter is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from unlawful robocalls made by agents, call centers and vendors.

70.     To the extent the calls at issue were made by third parties, the calls were made with the express and/or implied permission of and for the benefit of Charter, which would render Charter vicariously liable.

71.     To the extent certain calls were made directly by Charter, it would be directly liable for those calls.

## COUNT I
## DEFENDANT VIOLATED THE TCPA 47 U.S.C. §227(b)

72.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

73.     The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

74.     Defendant initiated multiple telephone calls to Plaintiff's cellular telephone number using a pre-recorded voice.

75.     Defendant's calls were not made for "emergency purposes."

76.     Defendant's calls to Plaintiff's cellular telephone were made without any prior express consent.

77.     Defendant contacted Plaintiff despite the fact that Plaintiff's number has been listed on the Do Not Call Registry since 2007.

78.     Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

79.     The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

80.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT II
## <u>DEFENDANT VIOLATED THE TCPA 47 U.S.C. § 227(c)(5)</u>

81.     Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

82.     The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered their telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

83.     Defendant contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry since January 23, 2007.

84.     Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

85.     The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

**86.**     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

### COUNT III
### Negligent Training, Hiring and Supervision

87.     For a Texas resident to prevail on a claim for negligent training, hiring, retention and supervision, a plaintiff must show more than just negligent hiring practices. *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App. 2015) (quoting *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 804 n. 27 (Tex. 2010).  For each of these negligence-based causes of action the plaintiff "must also show she 'suffer[ed] some damages from the foreseeable misconduct of an employee' who was hired, supervised or retained pursuant to the defendant's negligent practices."

88.     Charter has an obligation to monitor its "resellers" who market and sell Charter telecom plans based on strict contractual terms.

89.     Charter has the ability to exercise substantial control over its "resellers" even if it categorizes those resellers as independent contractors.

90.     Charter failed to properly train or supervise its resellers to prevent them from making unlawful outbound telemarketing calls.

91.     As a result of the foreseeable conduct by Charter's resellers and Charter's failure to properly monitor and supervise those resellers, Plaintiff suffered damages, including the cost

of sending Certified Mail to transmit the futile cease and desist letter, loss of data in phone plans, lost opportunity costs, stress, anxiety and loss of enjoyment.

92.     Because the violations were egregious and outrageous, Plaintiff seeks punitive damages.

## COUNT IV
## Invasion of Privacy: Intrusion Upon Seclusion

93.     Texas recognizes the tort of intrusion upon seclusion.  *See Cain v. Hearst Corp*., 878 S.W.2d 577, 578 (Tex. 1994)).

94.     To allege a claim for intrusion upon seclusion, a plaintiff must assert: "(1) an intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs or concerns, (2) that would be highly offensive to a reasonable person."  *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)).

95.     Unauthorized telephone communications may constitute invasion of privacy. *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365, 395 (Tex. App.—Houston [14th Dist.] 2004), rev'd on other grounds. *The Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 184 S.W.3d 707 (Tex. 2006).

96.     While a simple TCPA violation may not give rise to common law invasion of privacy, in this matter, the volume of calls from Charter to Phillip Cagle, after repeated demands to stop calling (in writing, verbally, through complaints to the BBB, complaints through Facebook Messenger, through letters) is egregious to the point where it would be highly offensive of a reasonable person.  That is especially true where the culprit is one of the world's largest telecommunications companies.

97.     The hundreds of unlawful robocalls were disruptive to Mr. Cagle's personal affairs, interfered with his conversations and private life.

98.     Defendant's invasions of Plaintiff's privacy caused Plaintiff to incur damages, including the cost of sending Certified Mail to transmit the futile cease and desist letter, loss of data in phone plans, lost opportunity costs, stress, anxiety and loss of enjoyment.

99.     Because the violations were shocking and outrageous, Plaintiff seeks punitive damages.

**Wherefore**, Plaintiff, **Phillip Cagle,** respectfully prays for judgment as follows:

a.     All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(b)(3)(A));

b.     Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3)(B));

c.     Treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227(b)(3));

d.     Statutory damages of $500.00 per violative telephone call (as provided under 47 U.S.C. § 227(c)(5)(B));

e.     Additional treble damages of $1,500.00 per violative telephone call (as provided under 47 U.S.C. § 227 (c)(5)(C);

f.     Injunctive relief (as provided under 47 U.S.C. § 227(b)(3) and (c);

g.     Compensatory damages for negligent training and supervision and invasion of privacy;

h.    Punitive damages for negligent training and supervision and invasion of

privacy; and

i.    Any other relief this Honorable Court deems appropriate.


## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **Phillip Cagle**, demands a jury trial in this case.

Respectfully submitted,

Dated: June 30, 2022                    By: */s/ Mary Higgins*
                                        Mary Higgins, Esq.
                                        University Office Plaza
                                        260 Chapman Road #201
                                        Newark, DE 19702
                                        Phone: (215) 540-8888
                                        Facsimile: (877) 788-2864
                                        Email:  teamkimmel@creditlaw.com

                                        */s/ Jacob U. Ginsburg*
                                        Jacob U. Ginsburg Esq.  (*pro hac vice* anticipated)
                                        30 E. Butler Ave.
                                        Ambler, PA 19002
                                        (215) 540-8888 ext. 104
                                        jginsburg@creditlaw.com
                                        teamkimmel@creditlaw.com